■ In the Matter of JOHN F. HUDACS, as Commissioner of Labor of the State of New York, Respondent, v FRITO-LAY, INC., Appellant, et al., Respondent. [625 NYS2d 722] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Harris, J.), entered March 11, 1994 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Industrial Board of Appeals revoking a notice of violation and order to comply issued by petitioner.

Respondent Frito-Lay, Inc. manufactures and distributes snack food through its route salespersons, who deliver its snack products to retail stores and collect payment for the sale immediately upon delivery. The snacks are picked up by the salesperson each morning from the Frito-Lay warehouse. A warehouse person and the route salesperson verify the cost and quantity of the snacks taken, and the amount is then recorded as a charge on the route salesperson's account with Frito-Lay. After each sale the salesperson completes a "sales

ticket" on behalf of Frito-Lay. If the salesperson receives cash for the transaction, he or she can deposit the cash into his or her personal checking account and pay Frito-Lay by check from that account or purchase a money order payable to Frito-Lay. Charge account customers use a charge ticket authorizing Frito-Lay to bill the store. Checks and money orders payable to Frito-Lay or executed charge tickets are mailed directly to Frito-Lay's Dallas, Texas, headquarters at the end of each day, along with a daily report. Frito-Lay reimburses the salesperson for any costs associated with purchasing a money order but has no authority or control over the salesperson's personal checking and banking accounts. The salesperson is notified of any shortage. However, any request for transmission of funds is not connected with the payment of wages nor is any reimbursement to Frito-Lay. Salespersons are paid their earnings in full regardless of any balance or shortage problem they may have, but failure to pay the shortage to Frito-Lay brings suspension and eventual termination of employment.

In June 1989 petitioner issued an "order to comply", asserting that Frito-Lay made illegal deductions from wages under Labor Law § 193 by requiring 52 of its route salespersons to reimburse the company for shortage in their accounts between 1986 and 1988. The order to comply alleged that Frito-Lay was liable for $35,017.11 in deductions, plus $8,396.84 in interest at 16%, and a $7,000 civil penalty, totaling $50,413.95.

Frito-Lay appealed to respondent Industrial Board of Appeals (hereinafter the IBA) and after a hearing was held before the IBA, at which the facts were undisputed, the IBA found, *inter alia,* that customer funds are not wages and that no part of the receipts were retained as wages. The IBA found no evidence that Frito-Lay undertook or made any direct deduction from the payroll nor did it delay, reduce or threaten the paychecks of the route salespersons. The IBA revoked the order to comply, stating that the payment for account shortages was not related to the payment of wages.

Petitioner then commenced this CPLR article 78 proceeding seeking to annul the IBA's decision and reinstate his order. Supreme Court annulled the IBA's decision, finding that the "turning over" of funds by route salespersons were deductions from wages, and reinstated petitioner's order to comply. Frito-Lay appeals.

There should be a reversal. Judicial authority to review the decision of the IBA is limited to determining "whether there

is substantial evidence in the record to support the ruling and whether there is a rational basis for the IBA's revocation of petitioner's order" *(Matter of Hudacs v Kimmins Abatement Corp.,* 206 AD2d 803, 804; *see also, Matter of First Coinvestors v Carr,* 159 AD2d 209). As the IBA's determination was supported by substantial evidence in the record and has a rational basis, the judgment of Supreme Court must be reversed, the determination of the IBA confirmed and the petition dismissed.

Labor Law § 193 (2) forbids charges against wages or payments by separate transaction that would otherwise not be permitted as a deduction. The IBA has ruled that an unlawful deduction is created when the wage payment, wage amount or employment situation is conditioned upon a separate and corresponding payment of wages back to the employer. However, the IBA here found that the payment of wages by Frito-Lay and the payments in dispute made by the route salespersons were unrelated and independent transactions. The IBA had ample evidence before it to support its interpretation of the transactions at issue, including the testimony of Robert Sweeney, a regional manager of Frito-Lay, and Lou Grieshaber, a divisional sales manager, both of whom described Frito-Lay's system concerning shortage repayments.

Further, the IBA also had before it copies of the agreements between Frito-Lay and Teamsters Local 264 for the years in question. The bargaining agreements specifically state that route salespersons are to be charged with all shortages, as determined by Frito-Lay. The bargaining agreement provides grievance procedures involving review by upper-level company management and perhaps an arbitrator. Voluntary resolution of labor disputes without government interference is a primary goal of the National Labor Relations Act (29 USC §§ 141, 151; *see, Paperworkers v Misco, Inc.,* 484 US 29, 37). Here, the IBA's conclusion that application of the statute to this case "would result in an improper interference with the collective bargaining process in violation of [the National Labor Relations Act]" is supported by the evidence and has a rational basis.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, determination confirmed and petition dismissed. *[See,* 160 Misc 2d 131.]