[859 NE2d 480, 825 NYS2d 674]

In the Matter of LINDA ANGELLO, as Commissioner of Labor, Respondent, v LABOR READY, INC., et al., Appellants, and INDUSTRIAL BOARD OF APPEALS, Respondent.

Argued October 17, 2006; decided November 16, 2006

## POINTS OF COUNSEL

*Morgan, Lewis & Bockius LLP,* Miami, Florida, Washington, D.C. and New York City (*Anne Marie Estevez,* admitted pro hac vice, *Samuel S. Shaulson* and *Peter Buscemi* of counsel), and *Schnader Harrison Segal & Lewis LLP,* New York City (*M. Christine Carty* and *Jane H. Kauh* of counsel), for appellants. I. The Appellate Division failed to apply the proper standard of review, under which the Industrial Board of Appeals decision should be upheld since it is reasonable, supported by substantial evidence in the record, and a proper exercise of the agency's expertise. (*Matter of Jennings v New York State Off. of Mental Health,* 90 NY2d 227; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.,* 59 NY2d 69; *Matter of Hudacs v Frito-Lay, Inc.,* 214 AD2d 940, 90 NY2d 342; *Matter of McGowan v Guy,* 304 AD2d 666; *Matter of Hudacs v Village of Watkins Glen,* 208 AD2d 181; *Matter of Hudacs v Kimmins Abatement Corp.,* 206 AD2d 803; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539.) II. There is no basis to reverse the Industrial Board of Appeals' rational and expert determination that Labor Ready does not directly deduct the cash dispensing machine transaction fees from its employees' earned wages in violation of section 193 (1) of the Labor Law. III. There is no basis to reverse the Industrial Board of Appeals' rational determination that the cash dispensing machine fees are not payments from earned wages required by the employer in violation of section 193 (2) of the Labor Law,

but rather are incurred in separate transactions through the voluntary choice of the employees. (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342.) IV. An alternative basis for reversing the Appellate Division's decision is that the cash dispensing machine transaction fees are assessed and collected by Labor Ready Properties, which does not employ any temporary workers and is not a party to these proceedings. (*Matter of Metropolitan Assoc. Ltd. Partnership v New York State Div. of Hous. & Community Renewal*, 195 AD2d 307.)

*Eliot Spitzer, Attorney General*, New York City (*Jennifer Brand, Caitlin J. Halligan, Nancy A. Spiegel, Patrick Barnett-Mulligan, M. Patricia Smith* and *Devin Rice* of counsel), for respondent. I. The plain language of Labor Law § 193 (1) prohibits an employer from deducting a fee from an employee's wages for cashing a payment voucher. (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Matter of Killian [General Motors Corp., Delco Chassis Div.—Sweeney]*, 89 NY2d 748; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539; *Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227; *Matter of McGowan v Guy*, 304 AD2d 666; *Matter of Hudacs v Village of Watkins Glen*, 208 AD2d 181; *Matter of Hudacs v Kimmins Abatement Corp.*, 206 AD2d 803.) II. If the deduction of fees is a separate transaction, the fees violate Labor Law § 193 (2). (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342.) III. The cash dispensing machine fees are deducted by the "employer" of the temporary employees. (*Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.*, 30 NY2d 34, 409 US 875; *Key Intl. Mfg. v Morse/Diesel, Inc.*, 142 AD2d 448.)

### OPINION OF THE COURT

Chief Judge KAYE.

Labor Ready, Inc., a national temporary employment firm, and its subsidiary Labor Ready Northeast, Inc., operate nine branches in western New York. Labor Ready supplies daily workers who perform manual labor—for example, stocking shelves or doing yard work—for businesses and individual customers. In 2002 Labor Ready had 7,000 customers in New York State and employed approximately 18,000 unskilled and semiskilled laborers whose average salary was $6.41 per hour.

To compete with other temporary employment firms, Labor Ready pays its employees at the end of every work day—the

company's slogans are "Work Today, Paid Today" and "Work Today, Cash Today." Typically, the temporary employees coming to Labor Ready do not have bank accounts and are unable to sustain themselves financially on a weekly basis. Since many live in shelters or rooming houses where they have to pay daily, they choose to go to Labor Ready because they know that they will be paid at the end of the day.

Upon completion of a job, a worker brings a supervisor a work ticket and is offered the option of being paid by check or by cash voucher. Those who choose a payroll check each day can cash it wherever they wish, including at a Fleet Bank for no charge. Neighborhood check-cashing facilities in Buffalo charge a fee of about 50 cents to one dollar; however, a worker may prefer not to receive cash at these places where other people may loiter.

Employees who opt for a cash voucher—redeemable only at a Labor Ready branch—receive a paper that looks just like a payroll check, but the signature space is voided and the voucher contains a PIN number that the employee must use at a cash dispensing machine (CDM). The voucher lists the gross wages, withholdings and the Labor Ready fee for redeeming cash. Thus, the actual value of the voucher is the worker's net wages minus the transaction fee. Labor Ready charges the worker one dollar plus any change that would have been part of the day's wages. If, for example, a worker's after-tax wages were $44.85, the voucher would be for $43, and upon accessing the CDM, the worker would receive $43 in cash.

Labor Ready makes multiple disclosures regarding the fees. The precise fee is on the voucher itself. Notice is also on pamphlets at Labor Ready branches, on a sign over each CDM and on the CDM screen during the transaction. Furthermore, during the transaction a worker may elect to return the voucher in exchange for a paycheck, which will be issued quickly.

The CDMs were first leased and operated by Labor Ready and in 2000 assigned to Labor Ready Properties, Inc., another subsidiary, which purchases maintenance services from unrelated companies, such as Brinks, and ultimately receives the transactional fees. In New York in 2002, on average 67% of the temporary employees received their wages by cash voucher. Labor Ready Properties generated $17,800 in revenue at Buffalo branches between 1999 and 2000 and $8.3 million in gross revenue nationally in 2000 from CDM fees charged to the temporary employees.

Having received complaints, the State Department of Labor in 1999 investigated Labor Ready's Buffalo branches for alleged unlawful deductions from wages for transportation and equipment costs and for deductions of CDM fees. In August 2002 the Department issued an amended order to comply with Labor Law article 6, directing payment to multiple named claimants. The parties settled the transportation and equipment cost deduction issues, with Labor Ready agreeing to pay more than $38,000 in restitution, interest and penalties. The parties were, however, unable to settle the issue concerning the CDM fees and stipulated that the amount of CDM fees generated at the Buffalo branches was approximately $17,800.

Upon review, the Industrial Board of Appeals (IBA) found no violation of Labor Law § 193 (1). Determining that the CDM charge against the employee's wages was a separate transaction under Labor Law § 193 (2), and entirely voluntary, the IBA found no violation. The IBA added, however, that it did "not in any sense condone" Labor Ready's practice of "extracting what is, relative to [the workers'] daily wages, an extravagant amount of money to cash their vouchers," and repeated that the fees seemed "excessive" when compared with the minimal amount of daily pay these laborers customarily received.

The Department then commenced this CPLR article 78 proceeding to annul the IBA's determination. Supreme Court transferred the proceeding to the Appellate Division, which reversed. Finding the matter one of statutory interpretation rather than agency deference, the Court concluded that the fee deduction and the payment of wages were inseparably connected and interrelated, and that the direct deduction of a fee for the service of providing cash wages was a violation of Labor Law § 193. We now affirm.

## Analysis

■■ As a threshold matter, we conclude that the Appellate Division applied the proper standard of review. Where, as here, the words are clear and the question simply involves proper application of a statute, there is little basis to rely on any special competence or expertise of the administrative agency (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539, 545 [1984]). We further agree with the Appellate Division that the IBA's interpretation directly contravened the plain language of Labor Law § 193.

The purpose of Labor Law article 6 is "to strengthen and clarify the rights of employees to the payment of wages" (*see*

*Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 223 [2000], citing Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548, at 4; *see also Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 461 [1993]). Labor Law § 193 (1) (b), part of article 6, explicitly prohibits an employer from deducting monies from the wages of an employee except as required by law or as "expressly authorized in writing" by and "for the benefit of the employee." The statute, moreover, specifies the deductions that an employee may authorize: "payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee."

A "deduction" literally is an act of taking away or subtraction. While under section 193 (1) (b) an employee may authorize an employer to take away or subtract wages, the clear language of this subdivision limits the types of deductions to those enumerated and to "similar payments." Labor Ready's fee for the service of providing a voucher for cash is a direct deduction of monies from wages. Even though the employee has the option of receiving a check, once the employee chooses the voucher the employer subtracts money from the amount received as wages.

■ Labor Ready does not argue that the deductions are similar payments to those the statute authorizes, for the money subtracted from the voucher is equivalent to service fees, not payments to a union or such organizations dealing with health, pensions or savings bonds. Nor can the charges be construed as a "benefit" to the laborers because all the authorized deductions listed in section 193 for the employee's benefit are monetary or supportive. The only benefit to the worker here is one of convenience. That, however, is not a "benefit" covered by the statute (*cf. Marsh v Prudential Sec.*, 1 NY3d 146 [2003] [investment banker's deferral of funds is a benefit]).

We agree with the Appellate Division that under subdivision (1) (b), an employee's act of receiving a voucher and cashing it at an on-site CDM is one transaction. Since the voucher already has the fee subtracted and can be cashed only at a Labor Ready CDM, the deduction is not disconnected from the payment of wages. Furthermore, since the voucher is not negotiable, the employee receives wages when he or she receives cash from the machine. Thus, the receipt of the voucher and subsequent receipt of cash cannot be viewed as two separate transactions.

Labor Ready asserts that Labor Law § 193 (2) governs because workers are simply paying a fee for service, and a worker's receiving the voucher and then cashing it are separate transactions. First, section 193 (2) provides that: "No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section." This language prohibits an employer from charging against wages or requiring a payment from wages by separate transaction unless the payment is one permitted in subdivision (1) (b). As we have noted, the fee for a cash voucher is not a "similar payment" to those specified.

Second, subdivision (2) was added to the statute in 1974 to "prohibit wage deductions by indirect means where direct deduction would violate the statute" (Mem of State Dept of Labor in Support of L 1974, ch 160, 1974 McKinney's Session Laws of NY, at 1957). The Legislature sought to end the subterfuge of an employer's paying full wages but then seeking payment at another time (*see Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342, 348 [1997]). In *Frito-Lay*, the employer sought, not by deduction from paychecks but by separate action, recoupment of cash that truck deliverers had received from grocery stores. This Court's decision, however, turned on the definition of "wages" and found that the cash that drivers received upon delivery of goods was owed to the employer and was not part of employee wages. Here by contrast the deduction of the processing fees occurs at the time the wages are paid. While it may appear that Labor Ready is paying the day laborer a full wage only to obtain payment at a later time, the employee never actually receives a negotiable instrument. Implementing the statute as written, we conclude that these deductions are governed by subdivision (1) (b) and violate the statute.

Interpreting section 193 to permit an employer to make deductions from earned income as long as the worker agrees and has the option of receiving full payment could open the door to a new category of deductions that would be illegal if directly deducted but would be lawful if they were an option. The Department provides an example: An employer may offer its employees who work Saturday to Friday the option of receiving their full wages on Friday or advance wages on Wednesday less a five percent "advance payroll processing" fee. Thus, any

deduction from wages under section 193 (2) would be legal as long as the employer structures it as a purportedly optional "separate transaction." In this case, the daily—as opposed to weekly—deductions could multiply the fee several times per week. While Labor Ready's decision to pay the temporary laborers daily is laudable, subtracting from wages a fee that goes directly to the employer or its subsidiary violates both the letter of the statute and the protective policy underlying it.

The legislative history of section 193 buttresses our reading of the statute. In 1889 and again in 1893, the Legislature passed laws requiring employers to pay employees in cash, not company scrip that could be used only at the "company store," and prohibiting charges for provisions as offsets to wages (*see* L 1889, ch 381, § 1; L 1893, ch 717, § 2). Several years later, the Attorney General wrote that a recodification was enacted to protect workers from questionable practices of employers (*see* 1899 Report of Atty Gen, at 335 [1900]), and the intention of the Legislature was "to absolutely prohibit the sale . . . to their employees, upon credit, of groceries, provisions or clothing, with a view to deducting the amount charged for the same from the weekly payments required to be made in cash" (*see* 1901 Report of Atty Gen, at 152 [1901]).

The next amendment to the statute, codified as Labor Law § 197 in 1921, provided that there could be no "off-set in behalf of the employer against wages" for provisions, clothing and groceries (*see* L 1921, ch 50). The recodification to the current section 193 (1) in 1966 expressly prohibits direct wage deductions with limited exceptions (*see* Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548, at 4). A memorandum in support of the bill adding the current subdivision (2) in 1974 states that since agreements to reimburse the employer by separate transaction are "in no sense voluntary," these were deemed unlawful (*see* Mem in Support, 1974 McKinney's Session Laws of NY, at 1957; *see also Frito-Lay*, 90 NY2d at 346-348). The history of Labor Law § 193 manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit. Labor Ready's CDM revenues demonstrate the employer's benefit from the payments—the inequity that the Legislature sought to prevent.

Labor Ready's remaining arguments are without merit.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, ROSENBLATT, GRAFFEO, READ, SMITH and PIGOTT concur.

Judgment affirmed, with costs.