Hajit **KOLJENOVIC** and Salit Koljenovic, Plaintiffs,

v.

David **MARX,** FBD Realty, LLC; 7 MDR of Queens, Inc.; 8 MDR of Queens, Inc.; RMDM of New York–87, Inc., Defendants.

No. 09–CV–4480 NG.

United States District Court, E.D. New York.

Signed Feb. 6, 2014.

Karl J. Stoecker, Law Offices of Karl J. Stoecker, Mineola, NY, for Plaintiffs.

Morris Tuchman, Law Offices of Morris Tuchman, Richard L. Yellen, New York, NY, for Defendants.

### OPINION AND ORDER

GERSHON, District Judge:

Plaintiffs Halit and Safet Koljenovic bring this action against defendants David Marx and several related corporate entities (collectively, the "Marx entities" [1])

---

1. Each of the corporate entities—FBD Realty, LLC; 7 MDR of Queens, Inc.; 8 MDR of Queens, Inc.; and RMDM of New York–87, Inc.—has its corporate headquarters and

seeking to recover overtime compensation and unauthorized wage deductions under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, §§ 160 *et seq.* Defendants now move for partial summary judgment with respect to plaintiffs' state law claims. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

## I. FACTUAL BACKGROUND

The following facts are undisputed or are construed in the light most favorable to plaintiffs as the non-moving parties.

### A. Plaintiffs' employment as building superintendents

Defendant David Marx owns and operates several multiple-unit residential apartment buildings in Queens, either directly or through one or more of the corporate entities named as defendants in this action. Plaintiffs, two brothers, worked as building superintendents in buildings owned and operated by the Marx entities at various times dating back to the mid–1990s. Plaintiffs contend that they routinely worked substantial amounts of overtime while employed by defendants, but were not paid time and a half their regular rate of pay for all hours worked in excess of forty hours per week.

Halit Koljenovic began working for the Marx entities in 1995. Initially, he was employed by RMDM 87 of New York–87, Inc. as the building superintendent of a 32–unit residential apartment building located at 132–64 Pople Avenue in Flushing, New York (the "Pople Avenue building"). Then, from approximately 2001 until his

principal place of business at 158–13 72nd Avenue, Queens, New York.

**2.** Although he initially testified that he had no other outside employment during the relevant

termination on or about October 17, 2008, he worked for 8 MDR of Queens, Inc. ("8 MDR") as the building superintendent of a 40–unit residential apartment building located at 145–18 34th Avenue in Flushing (the "34th Avenue building"). Halit was the only resident employee. There was also an employee known as a "janitor" who was responsible for the general upkeep of the 34th Avenue building.

Safet Koljenovic was first hired by FBD Realty, LLC in or about 1993 as the superintendent at the 34th Avenue building. He left the company of his own accord after approximately seven years because he was dissatisfied with the terms of his employment. After working as a building superintendent in New Jersey, he again sought employment with the Marx entities after hearing from Halit that the employment conditions there had improved. He was hired in February 2008 by 8 MDR as the building superintendent of the Pople Avenue building, where he worked until his termination on March 13, 2009. There was a part-time porter at that building, but Safet was the only resident employee.

Both Halit and Safet were given the job title of "building superintendent." Their duties included preparing and painting apartments for new tenants, responding to tenants' calls and complaints, attending to basic plumbing, electrical and other repairs, and maintaining the boiler. They were also expected to be available to attend to the tenants' emergencies whenever such events arose, including on nights and weekends. Halit alleges that as a result he worked approximately 80 hours per week,[2] while Safet affirms that he worked "around the clock." In exchange, Halit and Safet each received a net salary of

time period, Halit admitted at deposition that he also worked for Regal Park Nursing Home, a senior center located adjacent to the building, for approximately 5 to 8 hours per week, while employed by 8 MDR.

$400 per week, which was not dependent on the amount of hours worked. As additional compensation, they were each provided with a rent-free apartment in the building in which he worked, as well as free utilities and a free parking space.

In addition to their work as superintendents in the buildings in which they resided, both Halit and Safet allege that they performed duties in other buildings owned or operated by the Marx entities. Halit asserts that, for at least a period of time between 2001 and 2008, he was responsible for the maintenance of both the 34th Avenue and Pople Avenue buildings. Safet asserts that from 2008 to 2009, he would occasionally cover for Halit at the 34th Avenue building, and that he occasionally did plumbing work in other buildings operated by the Marx entities.

### B. Plaintiff Halit Koljenovic's allegations of improper wage deductions

In 2005, Halit Koljenovic recommended someone for a superintendent position at one of the residential apartment buildings operated by the Marx entities. Approximately one year later, David Marx advised Halit that this employee had wrongfully retained $15,000 that the employee had collected on 8 MDR's behalf. According to Halit, Marx told him that he would hold Halit personally responsible for the alleged theft and demanded, as a condition of Halit's continued employment, that he "repay" the moneys that the other superintendent had wrongfully converted. Halit subsequently made these payments to defendants out of his own wages.

### II. PROCEDURAL HISTORY

Plaintiff Halit Koljenovic initially filed this matter on October 19, 2009 as a putative collective action pursuant to section 16(b) of the Fair Labor Standards Act ("FLSA"), alleging that he and other similarly situated employees were not paid overtime wages in violation of the FLSA and the New York Labor Law. Plaintiffs filed an Amended Complaint on March 22, 2010, adding Safet Koljenovic as a named plaintiff and a claim under section 193 of the New York Labor Law for unauthorized deductions from the wages of Halit Koljenovic. After sending out a collective action notice, plaintiffs informed the court on March 31, 2010 that they were abandoning the collective aspect of the case, as no other employees had chosen to join the lawsuit. Plaintiffs filed a Second Amended Complaint on January 5, 2011 to this effect. Discovery has closed and defendants now seek partial summary judgment.

### DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted only if the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes relating to material facts—*i.e.,* "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in non-movant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir.2008).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir.2010). However, once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.2010) (internal quotation marks omitted), or "rest upon the mere allegations or denials" asserted in the pleadings, *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Instead, to defeat summary judgment, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (1986) (internal quotation marks omitted).

## II. CLAIM FOR OVERTIME WAGES UNDER NEW YORK LABOR LAW

Defendants argue that they are entitled to summary judgment on plaintiffs' claim for unpaid overtime wages because plaintiffs were employed as live-in janitors who are exempt from the overtime provisions of the New York Labor Law.

The New York Labor Law is a remedial statute designed to combat and eliminate employment "at wages insufficient to provide adequate maintenance for [the employees] and their families." N.Y. Lab. Law § 650. Although the New York Labor Law does not contain any statutory requirements regarding overtime pay, *Ballard v. Cmty. Home Care Referral Serv., Inc.*, 264 A.D.2d 747, 747, 695 N.Y.S.2d 130 (2d Dep't 1999), regulations promulgated by the New York Department of Labor (the "Department of Labor") generally require employers to pay overtime wages for all hours worked in excess of forty hours per week, so long as the employees are not

exempt under one of various statutory categories, *Severin v. Project Ohr, Inc.*, No. 10–cv–9696, 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012).

The Department of Labor has promulgated specific minimum wage regulations for the "Building Service Industry." *See* 12 N.Y. Comp.Codes R. & Regs. tit. 12 ("N.Y.C.R.R."), §§ 141 *et seq.* (the "Minimum Wage Order"). The Minimum Wage Order requires that employees in the building service industry, "except a janitor in a residential building," be paid at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week. *Id.* § 141–1.4. The regulations "do not provide for either minimum wages or overtime wages for 'janitors,' who are instead paid based on the number of units in the building in which they worked." *Niemiec v. Ann Bendick Realty*, No. 04–cv–00897, 2007 WL 5157027, at *4 n. 6 (E.D.N.Y. Apr. 23, 2007).

Defendants bear the burden of establishing that the janitorial exemption set forth in section 141–3.4 applies to plaintiffs' work for the Marx entities. *Cf. Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir.2010) (placing burden on proving FLSA exemption on defendants). In light of the remedial purpose of the New York Labor Law, the statutory exemption is narrowly construed against the employer. *Cf. id.* (narrowly construing FLSA exemptions from overtime pay requirement). Deciding whether the exemption applies may require the court to consider both questions of fact and law; the question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the overtime provision is a question of law. *See, e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986) (construing exemptions under the FLSA).

■ The Minimum Wage Order defines a "janitor in a residential building" as follows:

A *janitor* is a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. Where there is only one employee, such employee shall be deemed the janitor. Where there is more than one employee in the building, the employer shall designate an employee who lives in the building as the janitor. No building may have more than one janitor.

12 N.Y.C.R.R. § 141–3.4. As set forth below, the undisputed facts here establish that plaintiffs qualified as exempt janitors in a residential building: they provided "physical service[s] in connection with the maintenance, care or operation of a residential building"; they "live[d] in the building[s]" in which they worked; and they were the only resident employees in their respective buildings. *Id.*

In opposition to defendants' motion for summary judgment, plaintiffs first argue that they were not exempt from New York's overtime regulations because they were employed as "building superintendents" and not as "janitors." According to plaintiffs, they were never designated specifically as janitors, either orally or in writing, as required by New York law. *See id.* ("the employer shall designate an employee who lives in the building as the janitor"); *id.* § 141–2.1(a)(4)–(5) (requiring employers to establish and maintain payroll records showing each employee's "occupational classification (resident janitor, nonresident janitor, 'all other' workers)" and, "for janitors in residential buildings," the "number of units in [the] building" for which the employee is responsible). Plaintiffs argue they now cannot be deemed to be "janitors" for purposes of

the overtime regulations, especially where defendants referred to another employee as the "janitor." In the absence of a contemporaneous designation, plaintiffs warn that employers would be able to evade the overtime regulations by "making self-serving, after-the-fact designations in response to subsequent claims for overtime compensation." (*See* Pls.' Opp. at 5.)

This argument fails to raise a genuine issue of material fact. Under the Minimum Wage Order, plaintiffs were the only employees eligible to be designated as the exempt "janitor" under section 141–1.4 for each of their respective buildings. The plain language of section 141–3.4 provides that, "[w]here there is more than one employee" in a residential building, "the janitor" for purposes of New York's overtime regulations must be an "employee who lives in the building." *See* 12 N.Y.C.R.R. § 141–3.4. Plaintiffs concede that more one employee provided services at each of their respective buildings (*see* Halit Koljenovic Dep. 11:10–14; 30:14–16,–Safet Koljenovic Dep. 27:13–18), and that they were the only employees who lived in the buildings (*see* Second Am. Compl. ¶ 9). Plaintiffs also concede that they were designated as "building superintendents," which in the common parlance of New York City refers to a resident janitor. *See, e.g., Leich v. Borchard Affiliations,* 256 A.D. 1019, 1019, 10 N.Y.S.2d 496 (3d Dep't 1939); *Schmidt v. Emigrant Indus. Sav. Bank,* 148 F.2d 294, 295–96 (2d Cir.1945); *see also Harper v. Government Employees Ins. Co.,* 980 F.Supp.2d 378, 385, 2013 WL 5926980, at *6 (E.D.N.Y. Nov. 13, 2013) ("An employee['s] exempt status depends less on his title, and more on the actual duties performed."). Finally, plaintiffs concede that they were compensated consistent with the regulations for resident janitors, as they were provided with a flat salary, a rent-free apartment, and free utilities.[3] *See* 12

---

**3.** Plaintiffs were paid in excess of the mini-    mum wage for "janitors in residential build-

N.Y.C.R.R. §§ 141–1.5–1.6 (allowances for apartment and utilities).

Where there is only one employee who meets the statutory requirements for an exempt janitor in a residential building—in this case, rendering physical services and residence in the building—the employee is considered the exempt janitor under section 141–3.4, notwithstanding that the employer referred to the employee as the "building superintendent" or "super," instead of "janitor." *See Lee v. Kim*, No. 12–cv–316, 2013 WL 4522581 (E.D.N.Y. Aug. 27, 2013) (deeming building superintendents "janitors" where they performed maintenance services and were the only resident employees); *Mancero v. 242 E. 38th St. Tenants Corp.*, 40 Misc.3d 1213(A), 2013 WL 3723206 (Sup.Ct., N.Y.Cty. July 12, 2013) (finding no issue of fact that building superintendents were exempt janitors where they lived in the building, received free rent and utilities, and had no records establishing their claim to overtime); *cf.* 12 N.Y.C.R.R. § 141–3.4 ("Where there is only one employee, such employee shall be deemed the janitor."). Under such circumstances, there is no risk of the employer compensating several employees at the reduced "janitor" rate and then using after-the-fact designations to ward off subsequent wage and overtime claims.

Second, plaintiffs argue that the janitorial exemption does not apply to their work at the 34th Avenue and Pople Avenue buildings because any "janitorial work" performed by them was, at most, *de minimis*. This contention rests on the incorrect assumption that janitorial work is limited to tasks such as "cleaning duties," which plaintiffs assert they performed only when the part-time janitor or porter was unavailable. The Minimum Wage Order defines a "janitor" as "a person employed to render *any physical service* in connection with the maintenance, care or operation of a residential building." 12 N.Y.C.R.R. § 141–3.4 (emphasis added). There is no question that plaintiffs' work fell within this statutory definition. Their duties included making basic plumbing and electrical repairs, maintaining the boilers, and preparing vacated apartments for new tenants. (*See* Halit Koljenovic Dep. 11:2–9 (acknowledging that his responsibilities as building superintendent included "[p]reparing the apartments for tenant[s], answer[ing] the tenant[s'] calls, look [after] all repairs ... in the apartments, ... repair any kind of plumbing, electrical, maintenance on the ... pumps, maintenance of the boiler"); Safet Koljenovic Dep. 25:2–6 (describing job responsibilities as "respond[ing] to the calls, repairs, or whatever happens in [the] building" and maintaining the boiler).) As plaintiffs themselves concede, these tasks describe "physical services." (Pls.' Opp. at 5.) Accordingly, plaintiffs have not offered sufficient facts from which a reasonable jury could conclude that they did not render physical services in connection with the maintenance, care or operation of the 34th Avenue and Pople Avenue buildings.

Finally, in opposition to defendants' motion, plaintiffs argue that, even if they qualified as exempt "janitors" in the buildings in which they lived, they also performed services in other buildings owned by the Marx entities, and that they are owed overtime wages for the hours worked in those buildings. Halit asserts that he spent between 10 and 20 percent of his total weekly hours at the Pople Avenue building while he was the resident building superintendent at the 34th Avenue build-

ings," which rate is computed based on the number of units in the building. *See* 12 N.Y.C.R.R § 141–1.2.

ing. (*See* Halit Koljenovic Dep. 43:21–45:3.) Safet asserts that he sometimes covered for his brother Halit at the 34th Avenue building while he was the resident building superintendent at the Pople Avenue building (*see* Safet Koljenovic Dep. 32:12–15) and that he performed occasional plumbing work in other buildings owned by the Marx entities during 2007 and 2008 (*id.* 32:16–33:11 & 41:15–42:11).

Defendants respond that Halit admitted at deposition that any work performed at other buildings occurred only in 2000 or 2001, which is outside the applicable six-year statute of limitations. This contention is not supported by the portion of Halit's deposition testimony cited by defendants; there, Halit avers that he was "in charge of [ ] both buildings" "*from* 2000 or 2001" until his brother returned as the resident janitor of the Pople Avenue building in 2007. *(See* Halit Koljenovic Dep. 43:6–13 (emphasis added).) With respect to Safet's claims, defendants argue, incorrectly, that Safet alleges only a single instance in which he was asked to perform plumbing work at neighboring buildings. Construing his testimony in the light most favorable to plaintiffs, Safet asserts that defendants required him to attend to plumbing repairs in other buildings with some degree of frequency. (*See* Safet Koljenovic Dep. 41:15–42:11.) Accordingly, plaintiffs have raised genuine disputes for trial regarding whether they performed services at other buildings at the direction of defendants.[4]

For the foregoing reasons, defendants' motion for summary judgment on plaintiffs' claim for overtime wages under the New York Labor Law is granted, except as it pertains to plaintiffs' claim for compensation for work performed in buildings other than those in which they were the resident superintendents.

## III. CLAIM FOR IMPERMISSIBLE WAGE DEDUCTIONS UNDER NEW YORK LABOR LAW § 193

Defendants also seek summary judgment on plaintiff Halit Koljenovic's section 193 claim for impermissible wage deductions. Plaintiff asserts that he was compelled by defendants to repay funds that were wrongfully converted by another employee and that this compelled payment constitutes an unlawful deduction from wages.

Defendants principally argue that plaintiff's claim fails because he cannot show that any wages were ever deducted directly from his salary. In support of their motion, they offer payroll records from plaintiff's employment with 8 MDR to show that they made no deductions from his wages other than standard payroll taxes. The absence of a direct deduction from wages, however, is not dispositive, as New York law also prohibits indirect wage deductions such as compelled side payments.

Section 193 of the New York Labor Law "broadly prohibits employers from taking money from their employees for the employer's own benefit." *Hart v. Rick's N.Y. Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 951 (S.D.N.Y.2013). Specifically, section 193(1) "prohibits employers from making any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit." *Hudacs v. Frito–Lay, Inc.*, 90 N.Y.2d 342, 347, 660 N.Y.S.2d 700, 683 N.E.2d 322 (1997); N.Y. Lab. Law § 193(1); *see also Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579, 586, 825 N.Y.S.2d 674, 859 N.E.2d 480

---

4. Assuming such work can be established, it remains to be addressed whether that work is compensable and, if so, on what basis.

(2006). Section 193(3)(a) further provides that an employer may not "make a charge against wages or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of [section 193(1)]." N.Y. Lab. Law § 193(3)(a) (previously codified at § 193(2)). These two subsections, read in conjunction, prohibit an employer from requiring an employee to make any payment from his or her wages, including a payment structured as a separate transaction, unless the payment would be allowed as a direct deduction from the employee's wages. N.Y. Lab. Law §§ 193(1) & 193(3)(a); *see also Angello*, 7 N.Y.3d at 585, 825 N.Y.S.2d 674, 859 N.E.2d 480. Accordingly, the only permissible payments made from an employee's funds are those required by law or regulation, or that are expressly and voluntarily "authorized in writing by the employee and are for the benefit of the employee." N.Y. Lab. Law §§ 193(1).

The legislative history of section 193 confirms its broad applicability to payments structured as side agreements. "The history of Labor Law § 193 manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit." *Angello*, 7 N.Y.3d at 586, 825 N.Y.S.2d 674, 859 N.E.2d 480. As originally enacted, "section 193 forbade only direct deductions from wages." *Frito–Lay*, 90 N.Y.2d at 347, 660 N.Y.S.2d 700, 683 N.E.2d 322. In 1974, the New York State Legislature added a provision prohibiting separate payments or charges "to end the subterfuge of an employer's paying full wages but then seeking payment at another time." *Angello*, 7 N.Y.3d at 585, 825 N.Y.S.2d 674, 859 N.E.2d 480 (citations and internal quotation marks omitted). As amended, section 193 prohibits employers from using separate payments to achieve a result "which could not be accomplished through a direct wage deduction." *Frito–Lay, Inc.*, 90 N.Y.2d at 348, 660 N.Y.S.2d 700, 683 N.E.2d 322.

■ Here, the gravamen of plaintiff Halit Koljenovic's claim is that, as a condition of his continued employment, defendants required him to make payments, in transactions separate from the payment of wages, to cover funds owed to defendants and wrongfully retained by another employee. Plaintiff avers that the payments in question were made from his wages: defendants "demanded, as a condition of my continued employment, that I make an immediate payment to him of $5[,]000.00 and that I thereafter make further periodic payments until the entire $15,000.000 was 'paid back.'" (Halit Aff. ¶ 7.) Defendant concedes that plaintiff remitted payments in "repayment" of these funds. (*See* Deitch Aff. ¶¶ 13–15.) Requiring an employee to reimburse the employer, from the employee's own wages, for monetary losses caused by another employee is not specifically authorized by law or regulation, nor is it a payment that benefits the employee. *See* N.Y. Lab. Law § 193(1)(b). Indeed, Section 141–2.10 of the regulations promulgated by the New York Department of Labor for the building service industry specifies that "deductions for cash shortages or losses" are prohibited. 12 N.Y.C.R.R. § 141–2.10(a)(2).[5] Although defendants assert that they were unaware

---

**5.** Although defendants correctly note that the regulation cited by plaintiffs, 12 N.Y.C.R.R. § 142–2.10, does not apply to the building service industry, their objection is of no moment. The regulations that do apply to the building service industry contain the identical limitations on wage deductions. *See* 12 N.Y.C.R.R. § 141–2.10.

that plaintiff had made the payments out of his own funds, there is, at best, a genuine issue of material fact concerning the source of the payments.[6] Moreover, Defendants' argument that the payments were purely voluntary fails as a matter of law; even if voluntary, payments made from an employee's wages, must be "expressly authorized in writing by the employee and [be] for the benefit of the employee." N.Y. Lab. Law § 193(1)(b). Drawing all inferences in plaintiff Halit Koljenovic's favor as the non-moving party, I find that plaintiff has offered specific facts showing that he was required to pay defendants $15,000 out of his own pocket, to make up for sums wrongfully converted by a building superintendent whom he had recommended for hire.

Defendants' argument that the applicable statute of limitations on this claim had run by the time this action was filed is without merit. Plaintiff testified at deposition that he recommended the other employee for the superintendent position in 2005, and that the wrongful conversion occurred approximately one year later, *i.e.,* in or about 2006. Because the amended complaint adding the wage deduction claim was filed in March 2010, and New York Labor Law provides a six-year statute of limitations for wage claims, *see* N.Y. Lab. Law § 198(3), this claim was timely.

Accordingly, defendants' motion for summary judgment on plaintiff Halit Koljenovic's section 193 claim is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary on plaintiffs' New York Labor Law claim for overtime compensation is GRANTED except insofar as they have claims for work performed in buildings other than those in which they were the resident superintendents. Defendants' motion for summary judgment as to plaintiff Halit Koljenovic's New York Labor Law claim for unauthorized wage deductions is DENIED. The parties are directed to file a joint pretrial order on the remaining claims in accordance with this court's Individual Motion Practices by March 3, 2014 and to appear for a conference on March 5, 2014 at 10:30 a.m.

**SO ORDERED.**

---

**6.** Defendants suggest that they may be able to show at trial that the payments were not made from plaintiff's wages, but instead were remitted to defendants from funds that plaintiff collected from the employee who had wrongfully retained the funds in the first place. *See Frito–Lay*, 90 N.Y.2d at 348, 660 N.Y.S.2d 700, 683 N.E.2d 322 (holding that the term "any payment," as used in Labor Law § 193, "refer[s] only to payments from wages," and concluding that a plaintiff has no claim for payments that "merely represent[ed] full remittance of company funds temporarily entrusted to the employee's control, which the company has every right to expect will be fully remitted").