[802 NE2d 610, 770 NYS2d 271]

Todd B. Marsh, Individually and on Behalf of all Others Similarly Situated, Appellant, v Prudential Securities Incorporated, Respondent.

Argued October 15, 2003; decided November 24, 2003

## POINTS OF COUNSEL

*Fredric J. Gross Law Firm,* Mount Ephraim, New Jersey (*Fredric J. Gross, Susan E. Babb* and *Jacqueline Bittner* of counsel), and *Crowley & Crowley,* Morristown, New Jersey (*Noel C. Crowley* and *Michael C. Crowley* of counsel), for appellant. To effectuate its remedial purpose, Labor Law § 193's general rule against wage withholding must be liberally construed, while enumerated exemptions must be strictly construed. (*D'Amato v Morgan Stanley Dean Witter Discover & Co.,* 268 AD2d 392; *Hall v United Parcel Serv. of Am.,* 76 NY2d 27; *Weiner v Diebold Group,* 173 AD2d 166; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *Jacobs v Macy's E.,* 262 AD2d 607; *Edlitz v Nipkow & Kobelt,* 264 AD2d 437; *Matter of La France,* 173 AD2d 989; *Matter of Brookdale Hosp. Ctr. Tenants Assn. v Goldman,* 99 AD2d 702; *Greenwald v Chiarella,* 271 App Div 213; *Tuttle v Geo. McQuesten Co.,* 227 AD2d 754.)

*Cahill Gordon & Reindel LLP,* New York City (*Thomas J. Kavaler, Nicholas S. Goldin* and *Tammy L. Roy* of counsel), for respondent. I. As a threshold matter, elections to enroll in MasterShare are not subject to Labor Law § 193 because there is no "deduction" from already earned wages. (*Truelove v Northeast Capital & Advisory,* 95 NY2d 220; *Engstrom v Kinney Sys.,* 241 AD2d 420; *Matter of Dean Witter Reynolds v Ross,* 75 AD2d 373; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342.) II. In any event, the text of Labor Law § 193 (1) (b) expressly authorizes voluntary written elections to enroll in MasterShare. (*Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *Criscione v City of New York,* 97 NY2d 152; *Matter of Sutka v Conners,* 73 NY2d 395; *Apfel v Prudential-Bache Sec.,* 81 NY2d 470; *Rownd v New York State Guernsey Breeders' Coop.,* 194 Misc 701; *Sanders v Winship,* 57 NY2d 391; *People v Gaskins,* 171 AD2d 272; *Williams v Taylor,* 529 US 362; *Matter of Rodriguez v Perales,* 86

NY2d 361; *Cohen v Lord, Day & Lord,* 75 NY2d 95.) III. The surrounding circumstances underscore the validity of voluntary written elections to participate in MasterShare. (*Ferres v City of New Rochelle,* 68 NY2d 446; *Matter of Sutka v Conners,* 73 NY2d 395; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *Greenwald v Chiarella,* 271 App Div 213; *Matter of Theurer [Trustees of Columbia Univ. in City of N.Y.—Ross],* 59 AD2d 196; *Arbegast v Board of Educ.,* 65 NY2d 161; *B & F Bldg. Corp. v Liebig,* 76 NY2d 689; *Matter of Caroline,* 218 AD2d 388; *People v Keyes,* 141 AD2d 227; *Weiner v Diebold Group,* 173 AD2d 166.) IV. None of MasterShare's other structural features vitiates the legality of voluntary written elections to participate in the plan. (*Rownd v New York State Guernsey Breeders' Coop.,* 194 Misc 701; *Hall v United Parcel Serv. of Am.,* 76 NY2d 27; *Kristt v Whelan,* 4 AD2d 195, 5 NY2d 807; *D'Amato v Morgan Stanley Dean Witter Discover & Co.,* 268 AD2d 392; *Cray v Nationwide Mut. Ins. Co.,* 136 F Supp 2d 171; *Diakoff v American Re-Insurance Co.,* 492 F Supp 1115; *International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613.) V. None of the other issues pending in the Third Circuit has been certified to this Court or bears on the certified question of pure New York labor law. (*Tunick v Safir,* 94 NY2d 709.)

*Eliot Spitzer, Attorney General,* New York City (*Seth Kupferberg, Caitlin Halligan, Daniel Smirlock* and *M. Patricia Smith* of counsel), for New York State Commissioner of Labor, amicus curiae. I. Labor Law § 193 prohibits deductions that may be forfeited to the employer. (*Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *New York Cent. & Hudson Riv. R.R. Co. v Williams,* 199 NY 108, *affd sub nom. Erie R.R. Co. v Williams,* 233 US 685; *Greenwald v Chiarella,* 271 App Div 213; *Hughes Aircraft Co. v Jacobson,* 525 US 432; *Lockheed Corp. v Spink,* 517 US 882; *Weiner v Diebold Group,* 173 AD2d 166; *Watson v Prentice-Hall, Inc.,* 50 AD2d 1077; *Matter of Wright Metal,* 257 App Div 453, 283 NY 47.) II. The Department of Labor's interpretation of Labor Law § 193 further establishes the impermissibility of deductions that may be forfeited. (*Public Loan Co. v Hyde,* 47 NY2d 182; *DiLucia v Mandelker,* 110 AD2d 260, 68 NY2d 844; *Matter of Memorial Hosp. v Axelrod,* 68 NY2d 958; *Rownd v New York State Guernsey Breeders' Coop.,* 194 Misc 701; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *Truelove v Northeast Capital & Advisory,* 95 NY2d 220; *Matter of Dean Witter Reynolds v Ross,* 75 AD2d 373; *Hall v United Parcel Serv. of Am.,* 76 NY2d 27; *D'Amato v Morgan Stanley Dean Witter Discover & Co.,* 268 AD2d 392; *Cray v Nationwide Mut. Ins. Co.,* 136 F

Supp 2d 171.) III. Prudential's predictions of dire consequences if deductions under its plan are found illegal are illusory.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP,* New York City (*Brad S. Karp, Daniel J. Toal* and *Daniel R. Garodnick* of counsel), for Securities Industry Association, amicus curiae. I. Incentive compensation does not constitute "wages" within the meaning of New York's Labor Law and may be subject to forfeiture consistent with the governing compensation agreements. (*Engstrom v Kinney Sys.,* 241 AD2d 420; *Truelove v Northeast Capital & Advisory,* 95 NY2d 220; *International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613; *Rosenberg v Salomon, Inc.,* 992 F Supp 513; *International Paper Co. v Suwyn,* 978 F Supp 506; *Canet v Gooch Ware Travelstead,* 917 F Supp 969; *Tischmann v ITT/Sheraton Corp.,* 882 F Supp 1358, 145 F3d 561, 525 US 963; *Matter of Dean Witter Reynolds v Ross,* 75 AD2d 373; *Hall v United Parcel Serv. of Am.,* 76 NY2d 27; *RKO-Keith-Orpheum Theatres v City of New York,* 308 NY 493.) II. Prospective agreements concerning compensation cannot effect a deduction from "wages" and therefore are not subject to Labor Law § 193. (*Engstrom v Kinney Sys.,* 241 AD2d 420; *Hanlon v Macfadden Publs.,* 302 NY 502; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342.) III. In all events, even deductions from wages for restricted stock programs like MasterShare would be permissible under section 193 of the Labor Law because such deductions are for the benefit of the employee.

### OPINION OF THE COURT

GRAFFEO, J.

Defendant Prudential Securities Incorporated offers an optional investment benefit to a special class of its employees—financial advisors—that is designed to defer taxes on a portion of their income. Periodic contributions from the earnings of these employees are used to purchase shares in a public stock index fund. The question in this case, certified to us by the United States Court of Appeals for the Third Circuit, is whether this plan violates New York Labor Law § 193. We conclude that it does not.

In 1999, Prudential offered its professional financial advisors the opportunity to participate in a new investment program referred to as the MasterShare Plan. There are two primary benefits for employees who opt into the Plan—deferral of income taxes and the ability to purchase shares of a stock index fund at a substantial discount. An employee elects to join the Plan by

executing an irrevocable written authorization for Prudential to deduct between 5% and 25% of the employee's gross pay for one calendar year for Plan purposes. The deduction authorization remains in effect for subsequent years unless the employee cancels it or changes the amount of earnings to be deducted during the annual enrollment period.

The withheld compensation is placed in a "deferral account" for up to three months, during which time the employee surrenders control over the funds and receives no interest. At the end of the deferral period, the accumulated funds in the account are used to purchase Class Z shares of the Prudential Stock Index Fund, a public mutual fund, which mirrors the performance of the Standard & Poor's 500 stock index. The price of shares is the average of the month-end value for an index fund share during the three-month deferral period, with a 25% discount provided by Prudential. The purchased shares are then transferred to the employee's MasterShare account, where they must remain for at least three years.

Although the employee is the beneficial owner of the shares, and therefore has the right to dividends and to participate in shareholder votes, the employee is unable to transfer or sell any shares during this time frame. In addition, the Plan provides that if an employee decides to discontinue employment with Prudential or is terminated for cause during the three-year period, the entire balance of the employee's MasterShare account is forfeited to Prudential. On expiration of the three-year period, the participant can renew the account or cash in the shares and pay income taxes on the proceeds.

Plaintiff was employed by Prudential as a securities broker for almost two decades. He chose to participate in the Plan and authorized Prudential to withhold the maximum 25% deduction from his gross earnings. In December 2000, Prudential terminated his employment due to an alleged loss of confidence in his investment activities, which "were deemed in retrospect by [customers] to have entailed an unacceptable degree of risk."[1] Prudential then acquired all of the holdings in plaintiff's MasterShare account—approximately $165,000—of which about $145,000 was attributable to plaintiff's contributions. The bal-

---

1. Documentation submitted by Prudential to the Securities and Exchange Commission indicates that plaintiff was permitted to resign. The parties appear to agree, however, that his employment was involuntarily terminated, although plaintiff disputes that his dismissal was justified. This issue is not before us.

ance of the proceeds in the account represented Prudential's contributions to the share purchases.[2]

Plaintiff, a New Jersey resident, initiated a proposed class action against Prudential in a New Jersey state court but Prudential removed the case to Federal District Court. In his amended complaint in District Court, plaintiff asserted 10 causes of action, one of which claimed that the MasterShare Plan was illegal because New York Labor Law § 193 does not permit wage deductions to be invested in index funds.[3] He further contended that the Plan's initial, three-month deferral period, as well as its forfeiture provision, violate the statute's "benefit of the employee" requirement. Prudential moved to dismiss the Labor Law § 193 claim and both parties sought summary judgment.

The District Court granted Prudential's motion for summary judgment and dismissed the New York Labor Law cause of action. The court determined that a payroll deduction that is invested in stock is similar to the deductions that are enumerated in Labor Law § 193 (1) (b) because the investment program benefits the employee and the withholdings provide the employee with favorable income tax consequences. The court further explained that the forfeiture provision does not violate the statute's requirement that deductions must be "for the benefit of the employee."

The United States Court of Appeals for the Third Circuit, finding no definitive judicial interpretation of Labor Law § 193, and noting that the decision could affect a number of similar employee investment plans, certified the following question to this Court:

> "Whether New York Labor Law § 193 permits an employer, with an employee's written and informed authorization, to enable that employee to defer wage taxes by making wage deductions and denying the employee any interest in those deducted wages for three months, and then investing the deducted wages in Standard & Poor's 500-mirroring index

---

**2.** Plaintiff seeks to recover only his personal contributions to the account, not the additional value attributable to the 25% discount on the purchase price of the fund shares provided by Prudential.

**3.** The New York statute is implicated because the Plan documents state that "[t]he Plan shall be governed by, and construed and enforced in accordance with the substantive and procedural laws of the State of New York."

fund shares that, while beneficially owned by the employee, are temporarily non-transferable and forfeitable to the employer if the employee quits or is terminated for cause."

We accepted certification (99 NY2d 624 [2003]) and now answer that question in the affirmative.

Labor Law § 193 permits an employer to deduct a portion of an employee's wages if the deduction is "expressly authorized" by and "for the benefit of the employee" (Labor Law § 193 [1] [b]). The statute authorizes specific categories of wage withholdings that an employee may consent to: "payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee" (*id.*).

Plaintiff argues that the Plan violates this provision because the payroll deduction here is not solely for the benefit of a participating employee and is not sufficiently "similar" to the types of withholdings that are approved in section 193. He further contends that the Plan does not qualify under the statute because the initial, three-month deferral period amounts to an interest-free loan to Prudential and the forfeiture provision operates exclusively for the benefit of the employer.

Prudential counters that the Plan is comparable to wage deductions used to fund pension plans or the purchase of United States bonds. Prudential views the "freeze" period as an administrative necessity that, like the forfeiture provision, is required in order to gain the favorable income tax benefits available under Internal Revenue Code (26 USC) § 83.[4] Asserting that all aspects of the Plan must be evaluated in considering whether it is designed "for the benefit of the employee," Prudential asserts that the mere inclusion of a forfeiture clause does not equate to a per se violation of the statute.

Our first task is to determine whether MasterShare payments are "similar" to the various types of deductions that are specifically authorized by Labor Law § 193 (1) (b), an issue that cannot be resolved without considering the history of that provi-

---

4. The Plan documents advised employees that "it is anticipated that a Participant generally will not be subject to income tax on amounts deferred under the Plan . . . unless and until Shares are distributed to [the employee] free of restrictions, at which time the [value] of the Shares would be taxable as ordinary income."

sion. The statute was derived from former sections 10-13 of the Labor Law (L 1909, ch 36, §§ 10-13), which required employers to "full[y] and prompt[ly]" pay earned wages (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342, 347 [1997]). That mandate was interpreted as a prohibition against compelled wage deductions that were subject to forfeiture in the event of resignation by the employee without proper notice to the employer (*see* 1913 Ops Atty Gen [vol 2] 165, 167). Former sections 10-13 were eventually recodified, and outlawed the transfer of "future wages" (Labor Law former §§ 195-197, as added by L 1921, ch 50) in a statutory scheme that was intended to "prohibit[ ] deductions from wages for the benefit of the employer" (*Matter of Hudacs*, 90 NY2d at 347). The 1921 statutes were interpreted by the Attorney General to draw a distinction between deductions that benefit the employer (*see* 1930 Ops Atty Gen 399, 399-400) and voluntary deductions for investment purposes where the employee can withdraw the savings at any time (*see* 1930 Ops Atty Gen 402; 48 St Dept Rep 414, 416 [1933]).

During recodification of the Labor Law in 1966, a new section 193 was added, in language identical to the current statute in all relevant respects (L 1966, ch 548, § 2). It required that deductions be made "for the benefit of the employee," and limited permissible deductions to payments for insurance premiums, pension plans, health and welfare benefits, charitable contributions, union dues, the purchase of United States bonds and "similar payments for the benefit of the employee" (Labor Law § 193 [1] [b]).

The legislative history of the 1966 statute demonstrates that this provision was intended to codify opinions issued by the Attorney General regarding wage deductions (*see* Mem of Dept of Labor, Off of Indus Commr, Bill Jacket, L 1966, ch 548, at 4). At the time of enactment, the Attorney General had long determined that the Labor Law did not prohibit "voluntary [wage] deductions" for "an employees' stock buying plan" (1930 Ops Atty Gen 402; *see* 48 St Dept Rep 416). Furthermore, the agency charged with oversight—the Department of Labor—recognized that the phrase "similar payments" encompassed wage deductions for investments (*see* 1974 Ops Commr Labor, Inf Op to EF Hutton & Co. Inc. [June 18, 1974]).

Against this historical backdrop—most especially the legislative authorization of deductions for pensions and bonds, and the absence of any evidence that the Legislature intended to restrict employees from voluntarily investing a portion of their

wages—we conclude that Labor Law § 193 allows employees to divert part of their earnings into investment plans.

We now turn to plaintiff's argument that the Plan does not satisfy section 193's "benefit of the employee" provision because the possibility of forfeiture and the deferral period serve only Prudential's interests. Plaintiff urges us to declare the Plan invalid because an employee's accumulated withholdings, purchased shares and any growth in value may be subject to forfeiture if an employee resigns or is terminated for cause. Although we have approved of similar "golden handcuffs" arrangements in the past, in those situations the forfeited funds were in the nature of incentive compensation—such as a bonus—which category of compensation is not included in the definition of "wages" under Labor Law § 190 (1) (see e.g. Truelove v Northeast Capital & Advisory, 95 NY2d 220, 224 [2000]). That term is defined, in part, as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis" (Labor Law § 190 [1]). Here, despite the assertion of Prudential and amicus Securities Industries Association that such investment contributions are not deductions from wages, it is clear that plaintiff authorized periodic withholdings from his compensation to finance the eventual purchase of fund shares.[5]

Plaintiff, joined by the Commissioner of Labor, advocates that this Court adopt a per se rule that the possibility of forfeiture violates Labor Law § 193 (1) (b). But this would preclude courts from assessing the purpose of a forfeiture provision—i.e., whether it was intended solely to penalize workers or was designed to provide an investment vehicle with tax-deferral benefits to its employees and concomitantly encourage employee longevity. Although the provision in this case is clearly a "golden handcuff," nothing in the record before us suggests that em-

---

5. Prudential's motion to dismiss and cross motion for summary judgment in the District Court, to the extent they appear in the record, do not raise this issue. Moreover, the District Court did not address the "wages" issue; the court analyzed only two other arguments that Prudential now asserts—whether MasterShare deductions are similar to the categories of payments that are specifically listed in Labor Law § 193 (1) (b) and whether the Plan is not for "the benefit of the employee" because of the potential for forfeiture of the account funds. Before the Third Circuit, Prudential characterized the Plan as a "pre-tax wages" investment opportunity. Based on these assertions, the certified question presumes that the income here qualifies as "wages" under the Labor Law. We also presume the income is "wages" and do not address that issue on this appeal.

ployee participation was induced by purposeful misrepresentations regarding the purported tax benefits of the Plan. Rather than adopt a per se rule, we believe that whether a wage deduction for investment is "for the benefit of the employee" can be determined only by examining the investment plan in its entirety, giving due weight to the existence of a forfeiture provision.

As a threshold matter, we must assess whether the affected employee received appropriate notice of potential forfeiture. The Plan documents in this case include numerous warnings that forfeiture could occur. In fact, a section of the Plan contract is prominently entitled "Termination of Employment." This provision unequivocally explains that if a participant quits or is fired for "Cause" (as that term is defined in the document) before the expiration of the three-year restricted period, the employee "forfeit[s] all amounts then credited to [the] Deferral Account and/or MasterShare Account. Such forfeited amounts will revert to Prudential Securities." Thus, the Plan documents contain full disclosure of the possibility of forfeiture and plaintiff voluntarily opted to participate, taking the maximum payroll deduction.[6]

Also relevant to our inquiry is the type of employees who participate and the nature of the benefit conferred by the investment program. In this case, the MasterShare Plan was offered only to a segment of Prudential's work force with significant knowledge and expertise in assessing investment risks. Sophisticated financial advisors such as plaintiff could reasonably believe that the benefits and potential rewards of Plan participation outweighed the likelihood of loss for several reasons. The Plan purports to provide an immediate benefit by allowing eligible employees to defer taxes on the compensation that is withheld.[7] In addition, once the monies in a deferral account are used to purchase index fund shares at a discount, an employee becomes the beneficial owner of the shares, and is entitled to receive any dividends and exercise shareholder voting rights

---

**6.** Plaintiff alleges that his compensation during the final year of employment was the highest of his career, having generated over $400,000 in commissions.

**7.** Plan documents indicate that it was structured to satisfy the requirements of section 83 of the Internal Revenue Code in order to provide employees with a voluntary tax-deferral investment program. Because of the Third Circuit's formulation of the certified question, it is unnecessary for us to decide whether that Plan actually complies with the requirements of that statute, nor would it be appropriate for us to address this federal tax law issue.

during the three-year restricted period. Because the Plan confers these benefits on a participant even before the non-transferability period elapses, providing the opportunity for financial growth in an account, it is readily distinguishable from wage deductions and forfeitures designed to benefit the employer alone (*see e.g. Edlitz v Nipkow & Kobelt*, 264 AD2d 437 [2d Dept 1999]; *Jacobs v Macy's E.*, 262 AD2d 607 [2d Dept 1999]; *Tuttle v Geo. McQuesten Co.*, 227 AD2d 754 [3d Dept 1996]; 12 NYCRR 142-2.10 [a] [1]-[3] [prohibiting deductions for "spoilage or breakage" and "cash shortages or losses," as well as "fines or penalties for lateness, misconduct or quitting by an employee without notice"]). Hence, the disclosed risks do not negate the multiple benefits that these knowledgeable employees receive from their voluntary participation in the program, such as the opportunity to invest in securities, the ability to purchase shares at a substantial discount, the deferral of income taxes on compensation and the beneficial rights of stock ownership.[8]

Nor are those benefits negated by the three-month deferral period. Although plaintiff correctly notes that Prudential is free to use the funds in a deferral account during that time, income taxes on the diverted compensation are immediately deferred. Furthermore, the employee receives a 25% price discount at the end of the deferral period, which is effectively a one-third matching contribution from the employer on the average index share price over the period of deferral.

After examining the MasterShare Plan in its totality—the manner in which it functions, its governing documents, the immediate benefits and potential rewards of participation weighed against the risk of loss, the purposes of the forfeiture provision, the clarity of the notice that forfeiture was possible and the voluntariness of plaintiff's decision to participate—we conclude that the possibility of forfeiture on these facts does not warrant ineligibility under section 193. The wage deductions directed into the investment plan in this case qualify as "payments for

**8.** Although the Department of Labor has informally opined that a plan like MasterShare violates Labor Law § 193 (1) because of the risk of forfeiture, that conclusion was based on the presumption that a per se rule exists and the belief that the only benefit a participant receives is the discount on the purchase price of the securities (*see* 2002 Ops Commr Labor, Inf Op to Jonathan P. Arfa, at 3 [Aug. 29, 2002]). This stance appears to conflict with other departmental opinions that approve of wage deductions despite the possibility that the withheld funds could be forfeited (*see* 1991 Ops Commr Labor, Inf Op to Beverly Gross, at 1-2 [July 24, 1991]).

the benefit of the employee," which are "similar" to the types of wage withholdings specifically authorized by the statute (Labor Law § 193 [1] [b]). The Plan, therefore, does not violate Labor Law § 193 (1).

Plaintiff's remaining arguments fall outside the scope of the issue the Third Circuit certified to this Court.

Accordingly, the certified question should be answered in the affirmative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and READ concur.

Following certification of a question by the United States Court of Appeals for the Third Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.