Jessica O. Otitigbe, on behalf of herself and all others similarly situated, Plaintiff,

against
Rensselaer Polytechnic Institute, Defendant.


904767-18

Girvin & Ferlazzo, P.C.
Attorneys for Plaintiff
(Scott P. Quesnel, of counsel)
20 Corporate Woods Boulevard
Albany, New York 12211
Pattison, Sampson, Ginsberg & Griffin, PLLC
Attorneys for Defendant
(Rhiannon I. Spencer, of counsel)
22 First Street
P.O. Box 208
Troy, New York 12181-0208


Richard M. Platkin, J.

Plaintiff Jessica O. Otitigbe is a former employee of defendant Rensselaer Polytechnic Institute ("RPI"). She commenced this putative class-action lawsuit on behalf of herself and others similarly situated on the basis of allegations that RPI violated Labor Law § 193 by [*2]wrongfully deducting the cost of parking from employees' wages. Following joinder of issue and focused discovery, RPI moves pursuant to CPLR 3212 for summary judgment dismissing plaintiff's complaint. Plaintiff opposes the motion.
BACKGROUND
Plaintiff was employed by RPI from November 8, 2004 until March 16, 2018 (see NY St Cts Electronic Filing [NYSCEF] Doc No. 1 ["Complaint"], ¶ 6). Beginning in 2005, plaintiff worked on RPI's 256-acre main campus in Troy, New York (see id., ¶ 7; NYSCEF Doc No. 55 ["Quesnel Aff."], Ex. A, ¶ 3).
RPI owns, operates and maintains 12 lots for faculty and staff parking (see Complaint, ¶ 8; Quesnel Aff., ¶ 4; NYSCEF Doc No. 47 ["Preston Aff."], ¶ 6). According to the Complaint, RPI requires all vehicles parked in these lots to have a parking permit, and this permit only can be purchased from RPI (see Complaint, ¶¶ 9-11). "RPI employees can purchase an RPI parking permit through pro-rated payroll deductions, cash or check," but "[m]ost RPI employees chose to purchase an RPI parking permit through pro-rated, pre-tax payroll deductions," a practice that has been authorized "since at least 2003" (id., ¶¶ 13-15). The cost to purchase a parking permit is said to have ranged from $135 to $375 per year at relevant times (see id., ¶ 16). 
Plaintiff alleges that, "[b]eginning in August 2005, RPI made deductions from [her] wages to purchase an RPI parking permit" (id., ¶ 17). "From August 2005 through June 2007, RPI deducted $4.82 per week from her wages, or $9.64 per bi-weekly pay period for an RPI parking permit. From July 2007 through the end of [her] employment . . . , RPI deducted $5.21 per week from her wages, or $10.52 per bi-weekly pay period" (id., ¶ 18).
Plaintiff's sole cause of action alleges that RPI's practice of deducting the cost of parking from employee wages violates Labor Law § 193 because the parking program does not qualify as discounted parking and RPI employees, including plaintiff, did not voluntarily and knowingly authorize deductions from their wages (see id., ¶¶ 34-50). On the basis of these allegations, plaintiff contends that she and members of the putative class are entitled "to recover all amounts deducted from their wages to purchase an RPI parking permit or any other parking fees deducted from their wages" — an amount that is said to be in excess of $1 million (id., ¶¶ 51-55).
In its answer, RPI denied the pertinent allegations of the Complaint and alleged a number of affirmative defenses (see Spencer Aff., Ex. B ["Answer"]). As is relevant here, RPI asserted that it complied with the requirements of Labor Law § 193 (1) (a) "because the payroll deductions for parking are part of an employer-sponsored pre-tax contribution plan" pursuant to the Internal Revenue Code (26 USC ["IRC"]) § 132 (f) (1) (c) (Answer, ¶ 66). RPI further alleged, in the alternative, that its parking program constitutes "discounted" parking for the benefit of employees, within the meaning of Labor Law § 193 (1) (b) (vii) (id., ¶ 67). 
Following the exchange of focused discovery,[FN1]
 RPI moved for the summary dismissal of plaintiff's Complaint. RPI argues principally that its parking program complies with Labor Law [*3]§ 193 (1) (a) and (2) because the program is an "employer sponsored pre-tax contribution plan approved by the IRS" that is administered in compliance with applicable rules and regulations. Thus, RPI contends that it need not demonstrate compliance with Labor Law § 193 (1) (b). In any event, RPI maintains that the challenged deductions also are authorized under Labor Law § 193 (1) (b) as "discounted parking" and/or "payments for the benefit of . . . employee[s]."
DISCUSSION
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact," and the "[f]ailure to make such [a] showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If this showing has been made, "the burden shifts to the party opposing the motion . . . to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (id.; see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). On such a motion, all evidence must be viewed in the light most favorable to the non-moving party (see Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 340 [2011]).
Labor Law § 193 provides, in relevant part:
1. No employer shall make any deduction from the wages of an employee, except deductions which:
a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ; or
b. are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made. . . . Such authorized deductions shall be limited to payments for: . . .
(vii) discounted parking or discounted passes, tokens, fare cards, vouchers, or other items that entitle the employee to use mass transit; . . .
(xiv) similar payments for the benefit of the employee. 2. Deductions made in conjunction with an employer sponsored pre-tax contribution plan approved by the IRS or other local taxing authority, including those falling within one or more of the categories set forth in paragraph b of subdivision one of this section, shall be considered to have been made in accordance with paragraph a of subdivision one of this section.
A. Labor Law § 193 (1) (a) and (2)
RPI's principal argument in support of summary judgment is that its parking program complies with Labor Law § 193 (1) (a) and (2) because the challenged deductions are made in accordance with an "employer sponsored pre-tax contribution plan approved by the IRS" (NYSCEF Doc No. 49 ["RPI's MOL"], pp. 4-8).
1. Legal Framework
Labor Law § 193 (1) (a) allows wage deductions "made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency." 
Labor Law § 193 (2) further provides that "[d]eductions made in conjunction with an employer sponsored pre-tax contribution plan approved by the IRS . . . , shall be considered to have been made in accordance with [Labor Law § 193 (1) (a)]." Thus, an employer-sponsored pre-tax contribution plan is a permitted wage deduction under Labor Law § 193, so long as the deductions are made in accordance with an IRS-approved plan.
Under IRC § 61 (a) (1), "gross income" ordinarily includes the "fringe benefits" received by an employee, but other provisions of the IRC may exclude a "particular fringe benefit" (26 CFR 1.61-21 [a] [2]). As is relevant here, IRC § 132 (a) (5) excludes from gross income any fringe benefit that is a "qualified transportation fringe" ("QTF"). 
The term QTF includes "[q]ualified parking" (id., § 132 [f] [1] [C]), which "means parking provided to an employee on or near the business premises of the employer" (id., § 132 [f] [5] [C]). Parking is considered to be "provided by an employer" if the parking is "on property that the employer owns or leases" (26 CFR 1.132-9 [b] [Q & A4]).
According to the IRS, "[e]mployers may provide employees with . . . parking benefits either (1) in addition to employees' stated compensation (salary supplement), or (2) by reducing employees stated compensation (salary reduction)" (IRS INFO 2010-0146; 2010 WL 2666469). In a salary reduction arrangement, "the employee is allowed to designate a portion of the amount he [or she] would otherwise receive as salary to be set aside to fund [QTF] benefits that he [or she] then receives from the employer," and such portion is not included in the employee's income and wages for federal tax purposes (id.). This arrangement often is referred to as a "pretax" plan or a "compensation reduction agreement" (id.; see 26 CFR 1.132-9 [b] [Q & A11-12 (a)]).
IRS regulations do not require QTF benefit plans to be in writing (see 26 CFR 1.132-9 [b] [Q & A6]). However, if an employer elects to offer a QTF via a compensation reduction agreement, the agreement must satisfy the "election requirement," which obliges the employer to provide the employee with the right to elect whether to receive either fixed, taxable cash compensation or the pre-tax QTF. Such an election: (1) "must be in writing," or some other permanent form, "such as electronic"; (2) "must contain the date of the election"; and (3) "must relate to a fixed dollar amount or fixed percentage of compensation reduction" (26 CFR 1.132-9 [b] [Q & A11-12(a)]). This election may be automatically renewed when, upon "adequate notice" of any change to the program, the employee does not object to continued participation (26 CFR 1.132-9 [b] [Q & A11-12(b)]).
2. Analysis
a. RPI's Proof
Through the affidavit of its parking representative, RPI has shown that it owns 12 parking lots on its main campus that are designated for faculty and staff parking (see Preston Aff., ¶ 6 & Ex. A). This constitutes parking "provided by an employer" within the meaning of IRC § 132 (f) (5) (C) (see 26 CFR 1.132-9 [b] [Q & A4]). Further, because RPI allows employees to reduce their stated compensation to defray the cost of this parking and such amount is not included in the employee's gross income for federal tax purposes, the QTF benefit is provided in the form of "salary reduction" (IRS INFO 2010-0146, 2010 WL 2666469).
Since RPI offers its parking program through a "salary reduction" arrangement, there must be an election by the employee in writing or some other permanent form (26 CFR 1.132-9 [b] [Q & A6], [Q & A11-12(a)]). In this regard, RPI's parking representative avers that employees who wish to use the payroll reduction option are required to fill out an authorization form, which sets forth the amount to be reduced from the employee's salary and the date of election (see Preston Aff., ¶¶ 17-20).[FN2]
 RPI also submits what it claims to be plaintiff's signed "Parking Permit Application" ("Application"), dated August 19, 2005, in which plaintiff authorized a payroll deduction of $125 per year for parking (see id., ¶ 23 & Ex. G). In addition, as permitted by the IRS (see 26 CFR 1.132-9 [b] [Q & A12(b)]), RPI maintains an "AutoRenew" provision, also referenced on the Application, by which employees elect to renew the payroll deduction on an annual basis without having to sign a new authorization, so long as the employee is provided timely notice of any changes to the program (see id., ¶ 21 & Ex. G).
RPI also submits proof that its parking charge always has been significantly lower than the IRS's monetary threshold of $240 per month (see IRC § 132 [f] [2]; 26 CFR 1.132-9 [b] [Q & A7]; Preston Aff., ¶¶ 24-27).[FN3]
 Further, RPI's proof shows that the price of parking has been unchanged since July 1, 2007, when the annual parking fee increased to $135, and that "All Members of the Rensselaer Campus Community" were advised of this price increase on June 15, 2007 and informed of their right to cancel the automatic wage deduction by returning their parking permit (Preston Aff., ¶¶ 26-29 & Ex. H). Plaintiff did not return her permit (see generally Complaint), thereby manifesting her election to continue participating in the parking program (see 26 CFR 1.132-9 [b] [Q & A12(b)]).
In further support of its motion, RPI submits proof that other large institutions in the Capital Region offer employees the opportunity to pay for parking via pre-tax wage deductions. Specifically, RPI cites a similar program at Albany Medical Center and observes that even New York State employees are "required to use payroll deduction to remit payment for parking fees" (Preston Aff., ¶ 12 & Ex. B, p. 22).[FN4]

Finally, in an expert affidavit submitted on behalf of RPI, Nicholas J. Marchese, CPA, opines, within a reasonable degree of professional certainty, that "RPI's parking policy which permits eligible employees the opportunity to voluntarily utilize payroll deduction to pay for parking permits is a [QTF] benefit in compliance with IRS requirements and, as such, complies with" Labor Law § 193 (1) (a) and (2) (NYSCEF Doc No. 46 ["Marchese Aff."], ¶ 25). 
While plaintiff complains that the Marchese affidavit is inadmissible inasmuch as it relies on the accountant's own interpretation of the relevant statutes, regulations and agency guidelines, [*4]the Court need not reject his entire affidavit; it may disregard the portions that are not the proper subject of expert testimony by a certified public accountant (see e.g. Matter of Arto ZZ., 121 AD3d 1272, 1273 [3d Dept 2014], lv denied 24 NY3d 1050 [2014]). In the Court's view, however, it is appropriate to receive Marchese's opinion, formed on the basis of 30 years in public accounting and his "extensive experience in the tax and employee benefit areas[,] including [QTF] benefits," that RPI's parking program is an IRS-compliant QTF benefit (id., ¶¶ 3-4; see generally Dufel v Green, 84 NY2d 795, 798 [1995]; People v Cronin, 60 NY2d 430, 432 [1983]; Matott v Ward, 48 NY2d 455, 459 [1979]).[FN5]

b. Plaintiff's Opposition
In opposing the motion, plaintiff initially contends that IRC § 132 does not authorize wage deductions for parking fees. According to plaintiff, RPI "conflates the concept of a deduction from wages with the concept of an exclusion from gross income" (Plaintiff's MOL, p. 9 [emphasis omitted]). However, Labor Law § 193 (1) (a) and (2) do not require a specific law, rule or regulation that "authorizes" wage deductions; rather, the statute allows wage deductions "made in accordance" with the provisions of any law, rule or regulation (Labor Law § 193 [1] [a]), including the Internal Revenue Code and Treasury Department regulations.
Relatedly, plaintiff argues that RPI's parking program cannot qualify as a fringe benefit because a fringe benefit is a "form of pay for the performance of services" (Plaintiff's MOL, p. 11). To this end, plaintiff asserts that IRC § 132 "clearly concerns the situation where the employer either provides additional pre-tax compensation to reduce the employee's commuting costs or facilitates the employee setting aside a portion of their pre-tax salary to pay a third party for qualified parking" (id. [emphasis added]).
However, there is nothing in the text, structure or history of IRC § 132 or attendant regulations that supports plaintiff's cramped construction of the statute. Indeed, "qualified parking" expressly includes "parking provided to an employee on . . . the business premises of the employer" (IRC § 132 [f] [5] [C]), thus plainly contemplating the situation where the employer serves as a vendor of parking to its employees. Moreover, had Congress intended to exclude employer-provided parking from the definition of "qualified parking," it could easily have included such an exclusion in the statutory language (cf. id. [excluding "parking on or near property used by the employee for residential purposes"]).
Nor is plaintiff's reading of the statute supported by the 2010 IRS Information Letter (see Plaintiff's MOL, p. 12), which provides, in relevant part: "In a salary reduction arrangement, the employee is allowed to designate a portion of the amount he [or she] would otherwise receive as salary to be set aside to fund [QTF] benefits that he [or she] then receives from the employer" (IRS INFO 2010-0146, 2010 WL 2666469 [emphasis added]). Moreover, in footnote 2, the IRS letter states: "Although we believe it is outside the scope of [the] inquiry, we do note that it is also possible for employers to provide employees with qualified parking in kind" (id. [emphasis added]).
Plaintiff further argues that she never entered into a salary reduction agreement with RPI for parking permit fees, and she stresses that RPI "has never characterized the parking fees that it [*5]deducts from employee wages as part of any type of employee-sponsored pre-tax contribution plan" (Plaintiff's MOL, pp. 8-9, 13-14; see also NYSCEF Doc No. 54 ["Otitigbe Aff."], ¶ 3). Plaintiff bases this argument on RPI's characterization of the deduction for "parking fees" as a mandatory "payroll deduction" (Quesnel Aff., Exs. B, X, Y, AA, TT).[FN6]

These contentions are without merit. Plaintiff was not mandated to drive her vehicle to work or park it in an RPI-owned lot in close proximity to her workplace. She could have chosen to use on-street metered parking, purchase a municipal parking permit from the City of Troy, or commute to work via other means (e.g., mass transit, bicycle, walking) (see Preston Aff., ¶ 30; cf. Otitigbe Aff., ¶ 4). Instead, plaintiff affirmatively elected to purchase a permit from RPI that allowed her the privilege of parking in an on-campus lot that was convenient to her assigned workplace.
And regardless of the way that the parking program was described, the fact remains that plaintiff signed an Application authorizing RPI to deduct $125 per year from her wages to pay for on-campus parking (see Preston Aff., Ex. G; Quesnel Aff., Ex. V). In this regard, a 2004 IRS Revenue Ruling is instructive:
If an employee is given a choice between cash compensation or an employer-provided benefit under a statutory exception to the constructive receipt rules, such as § 132(f)(4), or if an employer unilaterally reduces an employee's cash compensation for the purpose of providing a non-taxable benefit, the benefit is treated as provided directly by the employer rather than purchased by the employee with the amount of the compensation reduction. Otherwise, the value of the benefit would not be excluded from the employee's gross income. The cost of providing the parking is incurred by Employer X, not Employee A, and the value of the benefit is excludable from A's gross income under § 132 (a) (5) because the parking is on or near X's business premises, and the parking benefit is provided by X. . . . The conclusion would be the same whether the compensation reduction was mandatory or elective. The conclusion would also be the same if the employer originally provided free parking to employees and then upon implementing the payroll arrangement purported to impose a charge on employees for parking (Rev Rul 2004-98, 2004-2 CB 664 [2004]; 2004 WL 2202056 [emphasis added]).Plaintiff further maintains that parking was not "provided by" RPI, as required under IRC § 132, because the statute and attendant regulations "clearly contemplate the situation where an employer owns or leases all or a portion of a parking facility that is available to employees and non-employees" (Plaintiff's MOL, p. 13). Plaintiff argues that this conclusion "is supported by the fact that the IRS determines the value of employer-provided parking based on the amount an individual would have to pay for the parking in an arms-length transaction; the existence of the employment relationship is disregarded, as is any subjective valuation of the benefit by the employee" (id., citing 26 CFR 1.132-9 [b] [Q & A-20]; 26 CFR 1.61-21 [b] [2]).
The Court does not find this argument to be persuasive. The pertinent Treasury Department regulation provides:
In general, fair market value is determined on the basis of all the facts and circumstances. Specifically, the fair market value of a fringe benefit is the amount that an individual would have [*6]to pay for the particular fringe benefit in an arm's-length transaction. Thus, for example, the effect of any special relationship that may exist between the employer and the employee must be disregarded. Similarly, an employee's subjective perception of the value of a fringe benefit is not relevant to the determination of the fringe benefit's fair market value nor is the cost incurred by the employer determinative of its fair market value (26 CFR 1.61-21 [b] [2] [emphasis added]). 
This regulation does not state or imply that parking is considered to be provided by an employer only where the same parking is made available to non-employees. As the IRS has observed, the value of employer-provided parking may be "based on the cost that an individual would incur in an arm's-length transaction for a space in the same lot or a comparable lot in the same general location under the same or similar circumstances" (Notice 94-3 [IRS NOT], 1994-1 CB 327 [1993], 1993 WL 536497, *7).
Finally, the Court is not convinced by plaintiff's reliance on a 2010 Department of Labor opinion (see Quesnel Aff., Ex. GG ["DOL Opinion"]; Plaintiff's MOL, p. 16). The opinion was written in response to an inquiry "as to the permissibility of wage deductions for the payment of parking garage fees" under Labor Law § 193 in circumstances where "the cost of the parking would be split equally between the employer and the employee" (DOL Opinion, p. 1). 
In this regard, DOL stated that "Labor Law § 193 (1) (a) provides that an employer may make a deduction from the wages of an employee only when it is in accordance with the provisions of any law or any rule or regulation issued by a governmental agency," and that the agency "is not aware of any provision of any law or any rule or regulation issued by any governmental agency specifically authorizing wage deductions for the payment of parking" (id., p. 2). Appended to this statement, however, was the following disclaimer: 
This opinion is based exclusively on the facts and circumstances described in your email and subsequent communication, and is given based upon your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. This opinion cannot be used in connection with any pending private litigation concerning the issue addressed herein (id. [emphasis added]). 
As an initial matter, the Court observes that the DOL Opinion is not an interpretation of Labor Law § 193. And even if it were, there is nothing in the statute requiring that a specific law or regulation "authorize" wage deductions; rather, the statute permits wage deductions if "made in accordance" with the requirements of law, rule or regulation (Labor Law § 193 [1] [a]). In this regard, the Court need not accord deference to DOL on this pure issue of statutory construction (see Matter of Angello v Labor Ready, Inc., 7 NY3d 579, 583 [2006]; Matter of Allen [Commissioner of Labor], 100 NY2d 282, 286 [2003]). 
Further, the DOL Opinion was issued in response to an inquiry as to whether it was permissible to split the cost of parking equally between the employee and employer and deduct the employees' portion from their wages. There is nothing in the opinion that refers to the QTF benefit relied upon by RPI herein. Finally, the opinion includes a broad disclaimer that, among other things, expressly prohibits its use in private litigation, such as the case at bar.
Finally, contrary to plaintiff's contention, it is of no moment that RPI's practice of deducting wages for parking began prior to the 2012 amendment to Labor Law § 193 that expressly authorized wage deductions made in accordance with an IRS-approved pre-tax contribution plan (see Plaintiff's MOL, p. 6). Labor Law § 193 (1) (a) always allowed wage deductions made in accordance with the IRC and Treasury Department regulations, and subdivision (2) was added to the statute in 2012 simply to "clarify that deductions made in conjunction with employer sponsored pre-tax contributions are permissible under [subdivision] (1) (a)" (Sponsor's Mem, Bill Jacket, L 2012, ch 451; see Quesnel Aff., Exs. VV, WW [same]; cf. Matter of Angello, 7 NY3d at 585-586).[FN7]

3. Conclusion
For all of the foregoing reasons, the Court concludes that RPI has established as a matter of law that the deductions from plaintiff's wages for on-campus parking were made in accordance with the provisions of an employer-sponsored pre-tax contribution plan approved by the IRS. As such, the deductions were made in compliance with Labor Law § 193 (1) (a) and (2). For this reason, plaintiff's Complaint must be dismissed.
B. Labor Law 193 § (1) (b)
As an independent ground for dismissal of the Complaint, RPI argues that its parking program complies with Labor Law § 193 (1) (b). Under the cited statute, an employer may deduct a portion of an employee's wage where the deduction is "expressly authorized in writing by the employee" and is "for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made" (Labor Law § 193 [1] [b]; see Marsh v Prudential Sec., 1 NY3d 146, 152 [2003]).
Labor Law § 193 (1) (b) delineates 14 categories of wage deductions "that an employee may consent to" (Marsh, 1 NY3d at 152; see 12 NYCRR 195-4.1). As is relevant here, subparagraph (vii) authorizes wage deductions for "discounted parking" and "discounted passes" (Labor Law § 193 [1] [b] [vii]). Moreover, as explained in DOL regulations, "[t]he examples provided within each benefit category are not exclusive," and "[p]ayments that are for the benefit of the employee and not otherwise prohibited will be allowed as 'similar' if they fall within one of the categories of benefits" set forth in the statute (12 NYCRR 195-4.4).
In support of its motion, RPI submits proof that the challenged wage deductions are for "discounted parking," inasmuch plaintiff never paid more than $10.42 per month for parking ($11.25 beginning in July 2007), whereas comparable parking in the area ranges from $1 per hour for metered on-street parking to approximately $60 per month for municipal parking (see [*7]Preston Aff., ¶ 30 & Ex. H, I).[FN8]
 
RPI also offers proof that its parking program provides a direct benefit to employees even beyond the discounted price. Specifically, the program allows parking expenses to be defrayed through the use of pre-tax dollars, thereby "enabl[ing] [the employees] to save federal, state and FICA taxes" (2016 RPI Employee Benefit Guide, Preston Aff., Ex. C, p. 27; see Marchese Aff., ¶ 24). 
Finally, RPI submits plaintiff's Application for a parking permit, in which she: (1) permitted RPI to deduct a total of $125 per year for parking; and (2) opted to utilize the "AutoRenew" option, which allowed the wage deductions to continue from year to year until affirmatively revoked (see Preston Aff., Ex. G).
Accordingly, the Court finds that RPI has demonstrated its prima facie entitlement to dismissal of the Complaint on the alternative ground that its parking program complies with Labor Law § 193 (1) (b) (vii).
In opposition, plaintiff takes issue with the authenticity of the "Parking Permit Application" proffered by RPI (see Plaintiff's MOL, pp. 19-20). However, plaintiff does not specifically deny filling out the Application. Nor does plaintiff claim that the signature on the Application is not hers. Accordingly, plaintiff has failed to squarely controvert RPI's assertion, made through its long-time parking manager, that the Application is a "true and accurate representation" of plaintiff's "parking permit application" that was made and kept by RPI in the regular course of business (Preston Aff., ¶ 23 & Ex. G; see also Quesnel Aff., Ex. V).
Relatedly, plaintiff argues that any parking authorization that she gave to RPI "was not voluntary," because employees cannot park in an RPI-owned parking lot unless they purchase an parking permit (Plaintiff's MOL, pp. 20-23; see Complaint, ¶ 39). As stated above, however, plaintiff was not required to park in one of RPI's on-campus lots as a condition of her employment. Plaintiff was free to utilize on-street parking, a municipal lot, other private lots or use an alternative means of transportation. Plaintiff freely and voluntarily chose the convenience of parking on campus in proximity to her workplace.
Plaintiff next contends that she was not given "written notice of all terms and conditions" of the wage deduction for parking fees (Labor Law § 193 [1] [b]; see Plaintiff's MOL, pp. 23-24). There is no requirement, however, that the employee receive written notice in hard-copy form; DOL regulations merely provide that the employee "shall be given an opportunity to review such materials, however the employer is not required to pay or provide the means for such review" (12 NYCRR 195-4.2 [a]). To this end, RPI submits proof that the terms and conditions of the parking program were disclosed to employees on RPI's website "during the relevant time period" (Preston Aff., ¶ 14 & Exs. D-E; see also id., Ex. C).[FN9]

Finally, plaintiff asserts that the RPI's parking program is not for the benefit of its employees; rather, it is for the benefit of RPI because the parking fees are used to offset its administrative costs (see Plaintiff's MOL, pp. 24-27; Complaint, ¶¶ 46-49). For the reasons that follow, this contention is without merit.
RPI was not required to provide on-campus parking for its employees, much less offer them discounted parking. Nor was RPI obliged to allow employees to defray the cost of parking through the use of pre-tax dollars. Clearly, RPI accorded its employees the benefit of using pre-tax dollars to pay the discounted cost of parking.
Moreover, while plaintiff claims the parking fees are used to defray RPI's administrative costs, she admits, and submits proof, that RPI used the collected fees to maintain existing lots, build a parking garage, and operate the free shuttle service used by employees (see Plaintiff's MOL, pp. 25-26; Quesnel Aff., Exs. II, RR, SS). In the Court's view, these are costs directly associated with parking, not administrative costs (see generally 12 NYCRR 195-4.5 [g]; cf. 10 NYCRR 1002.1; 9 NYCRR 166-5.3; 7 NYCRR 513.3; 9 NYCRR 2658.3; 9 NYCRR 6157.2; 18 NYCRR 409.3; 1 NYCRR 400.1; 14 NYCRR 812.3; 19 NYCRR 144.3; 9 NYCRR 6656.3 [definition of administrative expenses contained in regulations of various state agencies]). 
Finally, pertinent DOL regulations confirm that "[e]mployers are not precluded from making deductions in all cases where there is a benefit to the employer. Employers may make deductions for the sale of their own goods and services to their employees at a discounted rate as long as the deduction is in compliance with section 193 of the Labor Law and this Part" (12 NYCRR 195-4.3 [c]).
Based on the foregoing, the Court concludes that plaintiff has failed to raise a triable issue of fact in response to this branch of RPI's motion. Accordingly, the Court concludes that RPI's parking program independently complies with Labor Law § 193 (1) (b).
C. Public Policy Considerations
Finally, the Court deems it appropriate to briefly address plaintiff's public policy argument that "[a]llowing such unlimited, self-serving wage deductions by employers could place all New York State employees in an untenable position wherein they would be forced to choose between giving a portion of their hard-earned wages back to their employer in order to park near their workplace, or be forced to find public parking" (Plaintiff's MOL, p. 32 [emphasis added]).
There is, of course, no right to free, employer-provided parking. The Labor Law does not prohibit employees from being charged for parking on the employers' premises or require employers to provide discounted parking. At bottom, plaintiff wanted the convenience associated with parking on-campus in close proximity to her workplace, but now, almost 15 years after she agreed to participate in the wage deduction program, she seeks to avoid the very modest financial consequence of her "choice" (Otitigbe Aff., ¶ 4).
Further, this is not a case where "the unequal bargaining power between an employer and an employee" has "result[ed] in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit" (Matter of Angello, 7 NY3d at 586). As [*8]stated above, employees receive a real and substantial benefit from participating in an employer-sponsored QTF program of the type offered by RPI. If plaintiff's position were to prevail, employers could continue to charge for parking, albeit not through the use of wage deductions, and employees would simply lose the tax benefits associated with the QTF program.
CONCLUSION
For all of the foregoing reasons,[FN10]
 it is
ORDERED that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, defendant's counsel shall promptly serve notice of entry (see Uniform Rules for Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]).
Dated: Albany, New York
September 12, 2019
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 45-50, 53-109.



Footnotes

Footnote 1: At the outset of the case, RPI moved for a protective order, and plaintiff moved for permission to maintain this suit as a class action (see NYSCEF Doc Nos. 4-41). At a court conference held on January 28, 2019, the parties agreed to withdraw the motions and focus on their efforts on obtaining a ruling from the Court on the threshold issue of whether plaintiff possesses a viable cause of action under Labor Law § 193.

Footnote 2: Beginning in or about 2008, RPI began to use an electronic car registration system called Bosscars (id., ¶¶ 15-16).

Footnote 3: According to RPI's moving papers, this threshold "has ranged" from $240 to $260 per month at pertinent times (RPI's MOL, p. 6).

Footnote 4: Although plaintiff correctly notes that New York State is not subject to Labor Law § 193 (see Labor Law § 190 [3]), the fact remains that the wage deductions constitute a pre-tax benefit under IRC § 132. 

Footnote 5: In any event, the Court would reach the same conclusion without regard to the affidavit.

Footnote 6: At least one of plaintiff's exhibits states that parking fees deducted from employees' wages "may be pre-taxed" (Quesnel Aff., Ex. B). 

Footnote 7: Relatedly, plaintiff fails to provide any authority to support her contention that "[p]rior to 2012, Labor Law § 193 (1) (a) only authorized deductions that were expressly required by law, rule, regulation, or court decree" (Plaintiff's MOL, p. 5 [emphasis added]). The relevant language of Labor Law § 193 (1) (a) has remained virtually unchanged since 1974 (see Matter of Farfalla [New York Racing Assn.—Ross], 60 AD2d 666, 666 [3d Dept 1977]).

Footnote 8: While the Complaint alleges that RPI deducted $10.42 from plaintiff's paycheck on a "bi-weekly" basis (Complaint, ¶ 18), the documentary proof submitted by RPI conclusively defeats this allegation.

Footnote 9: Plaintiff argues through her counsel that RPI's submissions fail to show that these materials were available when she allegedly signed her parking authorization (see Plaintiff's MOL, p. 24), but RPI's parking representative clearly attests that the referenced materials were available "during the relevant time period" (Preston Aff., ¶ 14), and plaintiff does not aver to the contrary. Instead, plaintiff merely states that she was not specifically "told" about certain aspects of the parking program (Otitigbe Aff., ¶ 3). 

Footnote 10: To the extent not expressly addressed herein, plaintiff's remaining arguments have been considered and found to be lacking in merit.